**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **EDWIN F. YOUNG,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO. 10-00179-CG-M** |
| | ) | |
| **INTERNATIONAL PAPER** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| **Defendant,** | ) | |
| | ) | |

## ORDER

On April 16, 2010, the plaintiff, Edwin F. Young ("Young"), brought a lawsuit against the defendant, International Paper Company ("IP"), alleging that IP violated the Civil Rights Act of 1866 as amended, 42 U.S.C. § 1981 when it "intentionally and willfully discriminated against plaintiff due to his race… in promoting less-qualified white employees instead of [Young]." (Doc. 1, ¶¶ 77-78). This matter is now before the court on IP's motion for summary judgment (Doc. 29). The issues set forth in the motion have been fully briefed by the parties. For the reasons stated herein, IP's motion is due be GRANTED.

## PROCEDURAL HISTORY

Young's lawsuit alleged multiple instances of failure to promote on the part of IP. On May 26, 2010, IP filed a motion for judgment on the pleadings based on the statute of limitations. (Doc. 19). On September 13, 2010, this court granted IP's

motion in part, finding, concerning Young's claims, that "regardless of whether the two-year or the four-year statute of limitations is applicable, all of IP's denials of promotion that occurred prior to April 16, 2006, are barred by either statute of limitations." Id. at p. 6. The motion was denied as to the three latest denials of promotion alleged in the complaint. Id. Based on this ruling, only three positions remain at issue in this case -- the alleged "maintenance coordinator" position in April 2006, the "area manager" position in April 2006, and "process manager" in 2007.

## FACTS

As affected by this court's order on the motion for judgment on the pleadings, the pertinent undisputed facts are as follows: Young is an African-American male who has worked for IP since January 2, 1995. (Doc. 1, pp. 2-3). Young graduated from Livingston University (now the University of West Alabama) in 1994 with a Bachelor of Science degree in Industrial Technology before applying for employment with IP. Id. at p. 3.

IP is a producer of paper, packaging, and forest products, and operates a paper mill known as the Riverdale Mill, located in Selma, Alabama. (Doc. 29-1, p. 2). Within the Riverdale plant, there are four primary processing departments: 1) wood and pulp; 2) paper; 3) power; and 4) production, shipping and distribution ("PS&D"). Id. at p. 3. Young worked in the paper department, which includes two paper machines, numbers 15 and 16. Id. The management of the paper

department is organized as follows[1]: 1) a business unit manager for the entire paper department, 2) a superintendant for each paper machine, 3) an "area manager," for each paper machine,[2] 4) an operations maintenance coordinator ("OMC") for each paper machine, and 5) four shift process managers ("process manager").[3] Id. The area manager has broad responsibility for the entire paper machine to which he or she is assigned as well as responsibility for work on strategic and long term projects. Id. The OMC is responsible for managing and coordinating daily and outage maintenance on the paper machine with the maintenance department. Id. The process manager has direct contact with the hourly employees on a given shift, and is responsible for production, safety, "employee engagement," and paper quality. (Doc. 35-7, p. 7). The area manager, OMC, and process manager are

---

[1] This case is plagued by a dispute over organizational structure and nomenclature. IP asserts that each paper machine has a superintendent and an area manager, which are two separate and distinct positions. (Doc. 29-1, p. 3, ¶7). Young disputes this assertion, and offers the testimony of Joseph Crosby, a former human resources employee, who stated that the superintendent and the area manager are the same position. (Doc. 35-7, p. 7). However, Young himself testified at his own deposition that the area manager, the OMC, and the process manager all report to the superintendent. (Doc. 29-2, p. 14). Accordingly, the court adopts this model of the IP paper department's hierarchy.

[2] Young also disputes IP's use of the term "area manager" to describe the position of Paper Area Process Manager. However, Young himself used the term in his Complaint (Doc. 1, p. 8, ¶50), and did not file an amended Complaint to correct what he now asserts was an error. (Doc. 34, p. 4, fn. 2). Furthermore, Young makes repeated reference to the "area manager" in his own deposition testimony (Doc. 29-2, p. 14), and plaintiff's counsel used the term repeatedly while questioning Mr. Crosby (Doc. 35-7, p. 7). Therefore, for simplicity's sake, the court uses the term "area manager" to refer to the position of Paper Area Process Manager.

[3] Additionally, Young uses the term "foreman" to refer to the position described as "shift process manager" by Rusty Adair, IP's human resource manager. (Doc. 29-1, p. 3, ¶7). For simplicity's sake, the court uses the term "process manager" to describe this position.

ultimately responsible to the business unit manager, who in 2006 and 2007 was John Goss.  (Doc. 29-1, p. 3).

Area managers, OMCs, and process managers are paid a salary and are not hourly workers.  Id.  Because they are not hourly employees, these three positions are not part of any collective bargaining unit.  Id. at p. 4,  (Doc. 35-7, p. 8).

Young was initially hired as an hourly paid laborer/utility worker.  (Doc. 29-1, p. 4).  In 1997, Young became a process assistant on paper machine number 15.  (Doc. 35-5, p. 7).  By August 11, 2003, he had become an hourly paid process technician on paper machine number 15.  (Doc. 29-1, p. 4).  Young's responsibility as a process technician was to run quality tests on the paper being produced and ensure that it met all specifications. Id.  At all relevant times, Young was an at-will employee.  Id.  Also, as an hourly employee, he was represented for the purposes of collective bargaining by the United Steelworkers International Union ("Union").  Id.  IP and the Union are parties to a collective bargaining agreement ("CBA") relating to terms and conditions of employment, including setting wages paid to employees, promotions, demotions, transfers, lay-offs, and recalls.  Id.

On or about January 10, 2006, Young applied for an OMC position, and interviewed for it on February 9, 2006. Id.  Young was not selected for the position.  Bill Hardy, who is white, was ultimately selected for the position and assumed the responsibilities of OMC effective March 1, 2006.  (Doc. 37, p. 11).  Hardy's promotion was announced in the April 12, 2006, IP newsletter, the "Riverdale Daily."  (Doc. 35-4, p. 1).

Young then applied for an area manager position on or about April 18, 2006. (Doc. 29-1, p. 5). However, on May 17, 2006, before candidate interviews could be scheduled, Young contacted the human resources department and advised that he was withdrawing his application for consideration for the area manager position. Id. IP later selected Guy Wimberly, who is white, for the position. Id.

Approximately a year later, on July 17, 2007, Young applied for another OMC position. Id. Young withdrew his application for the position after IP's human resources manager, Rusty Adair, told him that a candidate had already been selected and therefore Young's interview would be for practice only. (Doc. 35-5, pp. 28-29). Charles Levell Hairston, who is African-American, was selected for the OMC job and began in that role on August 28, 2007. (Doc. 29-1, p. 5).

At about the same time as applying for the 2007 OMC position, in July 2007, Young was informed that he had been accepted into the mechanical maintenance apprenticeship ("MMA") program. (Doc. 29-2, p. 33). He is scheduled to complete the MMA program in January 2012. (Doc. 29-1, p. 6).

Young also asserts that at some point in July 2007, he applied and interviewed for the process manager position that was to be vacated by Levell Hairston, who had been selected as the new OMC for paper machine number 15. (Doc. 1, p. 8). Young was not selected for the position. Id. at p. 9.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-250. (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999). "If reasonable minds could differ

on the inferences arising from undisputed facts, then a court should deny summary

judgment." Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th

Cir. 1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838,

841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(a), the non-

moving party "must make a sufficient showing to establish the existence of each

essential element to that party's case, and on which that party will bear the burden

of proof at trial." Howard v. BP Oil Co., 32 F.3d 520, 524 (11th Cir. 1994)(citing

Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-

movant must "demonstrate that there is indeed a material issue of fact that

precludes summary judgment." See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608

(11th Cir. 1991). The non-moving party may not rely merely on allegations or

denials in [the non-moving party's] pleading; rather, its response must cite to

particular parts of materials in the record such that it sets out specific facts

showing a genuine issue for trial. See Fed R. Civ. P. 56(c). "A mere 'scintilla' of

evidence supporting the [non-moving] party's position will not suffice; there must be

enough of a showing that the jury could reasonably find for that party." Walker v.

Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving

party may avail itself of all facts and justifiable inferences in the record taken as a

whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992)

(citation omitted). "Where the record taken as a whole could not lead a rational

trier of fact to find for the non-moving party, there is no genuine issue for trial."

<u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986)

(internal quotation and citation omitted).

# DISCUSSION

## a. Statute of Limitations

In the order on IP's motion for judgment on the pleadings, this court stated:

> On the other hand, the denials of promotion for a maintenance coordinator position and for an Area Manager position, which both occurred in April 2006, and the denial of promotion to paper machine foreman in 2007, are untimely only if the two-year limitations period is applicable. However, this court is unable to make a determination at this time whether these three promotions rise to the level of an opportunity for a new and distinct relationship between the plaintiff and IP since this court lacks adequate information to compare the plaintiff's original job duties with each promotion he sought.

(Doc. 19, p. 5). In its summary judgment motion, IP first argues that there is now enough factual information available to this court to enable it to find that the remaining allegations of failure to promote are barred by the statute of limitations.[4]

Section 1981 does not contain an express statute of limitations. In 1987, the Supreme Court directed federal courts to determine the statute of limitations for § 1981 claims by applying the most appropriate or analogous state statute of limitations, which in Alabama is two years. <u>Goodman v. Lukens Steel Co.</u>, 482 U.S. 656, 661 (1987); <u>see</u> Ala. Code § 6-2-38 (1975). Shortly thereafter, in 1990, Congress

---

[4] Young also alleges that he applied for a process manager position in 2007. (Doc. 1, ¶ 52-56). IP disputes this allegation. (Doc. 41, p. 6). For summary judgment purposes, the court will address this allegation, as it was pled in Young's Complaint, and the court in any event takes all reasonable inferences in the non-moving party's favor.

enacted a general, catch-all four-year statute of limitations applicable to federal statutes enacted after December 1, 1990, except as otherwise provided by law. 28 U.S.C. § 1658. As a result, the statutory four year limitations period is only applicable to new causes of action that were not cognizable under § 1981 prior to the enactment of § 1658. Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 380-381 (2004).

In 1989, the Supreme Court ruled that § 1981 was not a "general proscription of racial discrimination in all aspects of contract relations" but that its protections extended "only to the formation of a contract, but not to problems that may arise later from the conditions of continuing employment." Patterson v. McLean Credit Union, 491 U.S. 164, 176 (1989). In 1991, Congress responded to Patterson by adding subsection (b) to § 1981 which redefined the term "make and enforce contracts" to include "the making, performance, modification and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." 42 U.S.C. § 1981(b). As a result, to determine whether the plaintiff's § 1981 failure to promote claims are governed by the two-year Alabama limitation period or the four-year federal limitation period, the critical inquiry is whether the claims were cognizable under § 1981 before it was amended in 1991. Particularly in regards to a failure-to-promote claim, this court must determine whether the promotion rose "to the level of an opportunity for a new and distinct relation between the employee and the employer" because if it does, then that claim was actionable under § 1981 prior to the 1991 amendments, and thus the

two-year statute of limitations applies.  <u>Patterson</u>, 491 U.S. at 185, 109 S.Ct. at 2377.

### (i) "New and Distinct Relationship" Analysis

While courts have long struggled over <u>Patterson's</u> meaning of "a new and distinct relation between the employee and the employer,"  some general principles can be discerned.

> The inquiry is fact-specific and embodies no single criterion.  It comprehends all relevant factors, including pay, duties, responsibilities, status as hourly or salaried employee, method of calculating salary, required qualifications, daily duties, potential liability and other benefits.  Higher pay, by itself, will not transform a promotion into a new and distinct relation.

<u>DeBailey v. Lynch-Davidson Motors, Inc.</u>, 734 F. Supp. 974, 977 (M.D. Fla. 1990) citing <u>Brown v. American Food Serv. Corp.</u>, 1990 WL 10021 (E.D. Pa. Feb. 6, 1990).

Eleventh Circuit caselaw provides the court with some examples of this factual inquiry.  In <u>Hithon v. Tyson Foods, Inc.</u>, 144 Fed. Appx. 795 (11th Cir. 2005), the Eleventh Circuit held that a promotion from plant personnel manager to human resources director for an entire complex of plants represented a new and distinct relation between the employee and employer.   In <u>Saunders v. Emory Healthcare, Inc.</u>, 360 Fed. Appx. 110 (11th Cir. 2010), the Eleventh Circuit upheld a district court's finding of a new and distinct relation where the promotion in question was from nurse to educational coordinator.  Conversely, in <u>Wall v. Trust Company of Georgia</u>, 946 F.2d 805, 808 (11 Cir. 1991), the Eleventh Circuit found that a promotion at a bank from customer service representative to tax analyst was not a

new and distinct relation because the plaintiff's new job was relatively equal in grade, provided identical benefits and compensation, was covered by the same policies and procedures, and was not a management position. Id. And in Summerlin v. M&H Valve Co., 2005 WL 6132650 (N.D. Ala. Jan. 31, 2005), the district court ruled that a promotion from factory worker holding various positions under a collective bargaining agreement ("CBA") to supervisor/management represented a new and distinct relationship, and accordingly applied the two-year statute of limitations. See also, Price v. M&H Valve Co., 177 Fed. Appx. 1 (11th Cir. 2006).

Courts outside the Eleventh Circuit have also provided guidance on this question. In Butts v. City of New York Department of Housing Preservation and Development, 990 F.2d 1397, 1412 (2nd Cir. 1993), the Second Circuit wrote that a promotion "from factory worker to foreman, foreman to foreman supervisor, or manager to officer, likely would create a new and distinct relation giving rise to a §1981 action under Patterson." Id. In Fray v. Omaha World Herald Co., 960 F.2d 1370 (8th Cir. 1992), the Eighth Circuit found that the four-year statute of limitations applied because the promotion in question would have left the plaintiff as a "non-supervisory employee working at an hourly wage in the same department," with "basically the same" job duties as before the promotion. Id. at 1373. Similarly, the Tenth Circuit stated in Cross v. Home Depot, 390 F.3d 1283, 1289 (10th Cir. 2004) that "changes in the contractual relationship could include promotions from nonsupervisory to supervisory positions and advancements from being paid by the hour to being a salaried employee." See also, Rodriguez v. General

Motors Corp., 27 F.3d 396, 399 (9th Cir. 1994), Kim v. Nash Finch Co., 123 F.3d 1046, 1055 (8th Cir. 1997).

IP claims that the promotions now at issue in this lawsuit were opportunities for a new and distinct relationship between it and Young, which Young disputes. At the time he applied for these positions, Young was a process technician, which is an hourly position that is represented by the Union pursuant to a CBA. Young was entitled to overtime wages in accordance with the CBA. It is undisputed that a process technician is a not supervisory position, nor part of management.

Area managers, OMCs, and process managers, on the other hand, are salaried positions which are not subject to the CBA, and are not entitled to overtime pay. (Doc. 29-1, p. 3), (Doc. 35-7, p. 8). It is undisputed that all three positions are supervisory, and that each involves more responsibility and more pay than a process technician. Id. The vacancies for all three positions were publicly posted, and each position required a written application and a job interview, all of which suggests a new beginning between the employee-applicant and IP. In other words, the promotions at issue here exhibit several factors that the Eleventh Circuit and other circuits have relied upon in determining whether or not, and why, a position represents a new and distinct relation between employer and employee, per Patterson.

Not surprisingly, Young argues that the promotions in question do not represent a qualitative change or a new contractual relationship. First, he asserts that he performed "root cause failure analysis" ("RCFA"), which consisted of

analyzing problems that arose with the paper machine. (Doc. 34, p. 14). Therefore, Young posits, he "essentially" performed the duties of an OMC despite his status as a process technician. Id. For support, Young cites the testimony of Joseph Crosby, a former employee in IP's human resources department, who stated that:

> A maintenance coordinator [OMC] is primarily responsible for planning outages on a machine and gathering the resources, such as maintenance and other resources, to successfully take the machine down and get it back up running. It's basically a planner, pretty much, planning the maintenance of a machine." (Doc. 35-7, p. 4).

It is not clear to the court that Crosby's testimony supports Young's contention that analyzing problems with the paper machine "essentially" equals planning the maintenance of the machine. Young cites no other testimony or facts to support this assertion.

Young also makes the related claim that he had previously "performed most of the job duties for each position" to which he applied. (Doc. 34, p. 17). Yet the portion of Young's deposition testimony cited for support establishes only that he performed one specific duty, the RCFA. (Doc. 35-5, p. 66). Young's brief cites no additional facts to support his claim that he had done "most" of the job duties for the positions in question. Id. There is nothing in the cited portions of Young's testimony which states what those duties were, when he performed them, how often he performed them, what degree of responsibility was delegated to him, or whether

RCFA was beyond the scope of his responsibilities as a process technician.[5] Id.

Next, Young claims that, had he received any of the promotions in question, the chain of command above him would have remained the same. (Doc. 34, p. 17). However, Young does not point to any evidence other than his own conclusory deposition testimony to support this assertion. Young did not claim any special knowledge of IP's human resources scheme, or did he cite to IP's organizational chart (an exhibit which he introduced at Doc. 35-1, p. 1) to support the notion that the chain of command would have remained the same. Young could not even state how many immediate supervisors he had. (Doc. 35-5, p. 66). Such a conclusory allegation without specific supporting facts have no probative value. Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000), and is not sufficient to establish a genuine dispute for summary judgment purposes.

Young also states that the target results, outcome requirements, and expectations for the ***positions*** he sought would have remained the same as those of a process technician, and cites to his own deposition testimony for support. (Doc. 34, p. 17), (Doc. 35-5, pp. 65-66). However, the question posed to Young at his deposition was whether the target results, outcome requirements, and expectations of the ***process unit*** would have remained the same, which poses a different

---

[5] To the extent that Young's testimony addresses these issues in more detail elsewhere in the record, he did not cite such testimony in his brief. In this situation, it is Young's duty to direct the court to the portions of such transcripts which he contends he was already performing the duties of the positions he applied for. The court will not undertake to do this for Young. Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

question. (Doc. 35-5, pp. 65-66).  Thus, Young's testimony on this point really only addresses the performance expectations of the unit as a whole and not each individual position within the unit.  Even if the court infers that the term "process unit" has the meaning that Young ascribes to it in his Opposition Brief (Doc. 34, p. 17), he cites nothing other than his own opinion for support.

Young asserts that he would have been reporting to the same location and facility with the same mission and plant objectives. (Doc. 34, p. 17).  This is irrelevant.  The court cannot find, nor did Young cite, any case which suggests that the location of the job is determinative of whether or not it represents a new and distinct relationship with the employer.  Young also fails to explain or cite any case which suggests that having the same mission and plant objectives is determinative in establishing the existence or absence of a new and distinct employer/employee relationship.

Young also claims that a dispute exists regarding whether or not the process manager position was a salaried or an hourly position. (Doc. 34, p. 15).  Specifically, Young distinguishes between a permanent and a temporary process manager (which he calls a "set-up foreman"), and claims that the temporary process manager is paid on an hourly basis. (Doc. 35-5, pp. 58-59).  However, Young did not allege that he applied for a **temporary** process manager position.  Rather, Young alleged simply that in 2007 he applied for a  process manager position, without making any reference whatsoever to the position's permanence or lack thereof. (Doc. 1, p. 8, ¶52-57).

Even if Young had properly stated such an allegation in the Complaint, his own witness contradicted him on this point. Joseph Crosby, the former human resources employee, stated that when someone becomes a temporary process manager, "the folks in Payroll basically **change his pay from hourly to salary** for that length of time." [emphasis added] (Doc. 35-7, p. 8). This exchange totally undercuts the notion that a dispute exists, and bolsters the view that the process manager position is in fact salaried. Crosby clearly states that when someone becomes a temporary process manager, the IP payroll office changes that person's pay from hourly to salaried for the length of time that the person acts as a process manager. Id.

Finally, Young asserts that, regardless of whether he was salaried or hourly, his relationship to the company would have been the same. (Doc. 34, p. 17). This statement has no corresponding factual support whatsoever. Young simply cites to the page of his deposition wherein he makes the exact same statement of opinion. (Doc. 35-5, p. 66: 13-16). Conclusory allegations based on mere subjective beliefs do not create a genuine issue of material fact. Plaisance v. Travelers Insurance Company, 880 F.Supp. 798, 804 (N.D. Ga. 1994) (citing Carter v. Miami, 870 F.2d 578, 585 (11th Cir. 1989).

Accordingly, for the reasons enumerated above, this court finds that the 2006 OMC position, the 2006 Area Manager position, the 2007 OMC position, and the 2007 process manager position each represented a promotion that would have risen "to the level of an opportunity for a new and distinct relation between the employee

and the employer" as contemplated by the Supreme Court in <u>Patterson</u>, 491 U.S. at 185. Thus, the claims were cognizable under § 1981 before it was amended in 1991, and the two-year statute of limitations applies. Therefore, Young's failure-to-promote claim, with respect to all four positions to which he applied, is time-barred, and IP's motion for summary judgment is due to be granted.

### (ii) The Four-Year Statute of Limitations

Even if the two-year statute of limitations did not apply, Young's claim with respect to the 2006 OMC position would be subject to the four-year statute of limitations contained in 28 U.S.C. § 1658.

The four-year limitations period began when "the facts which would support a charge of discrimination [were] apparent or should [have been] apparent..." <u>Sturniolo v. Sheaffer, Eaton, Inc.</u>, 15 F.3d 1023, 1026 (11th Cir. 1994). Young filed suit on April 16, 2010. Therefore, in order for Young's claim to fall within the four-year statute of limitations, he must point to facts which establish that his cause of action ripened at some point on or after April 16, 2006. If Young's cause of action ripened at any point before April 16, 2006, then a claim filed on April 16, 2010, would be time-barred.

Young applied for the OMC vacancy in early January 2006, and interviewed for the position approximately one month later, on February 9, 2006. (Doc. 29-1, p. 4). Bill Hardy was ultimately selected for the position and assumed the responsibilities of OMC effective March 1, 2006. (Doc. 37, p. 11). Hardy's promotion was announced in the April 12, 2006, edition of the IP newsletter, the

"Riverdale Daily." (Doc. 35-4, p. 1). Young testified at his deposition that he "probably" saw the April 12 edition of the "Riverdale Daily" sometime after it was published. (Doc. 35-5, pp. 63-64). Later in the same deposition, however, Young blatantly contradicts himself:

> Q.      So as of April 12, 2006, you knew that you had not been selected for the maintenance coordinator position for PM number fifteen?
> A.      That is what I know.
> Q.      Did you pick that daily up on April 12, 2006?
> A.      Probably did.
> Q.      You read it on April 12, 2006?
> A.      Yes.
> [...]
> Q.      The newsletters are a pretty good way of sharing what is going on in the mill, right?
> A.      Yes, ma'am.

(Doc. 29-2, pp. 21-22). Thus, according to Young's own testimony, he learned on April 12, 2006, that (i) he had not been selected for the 2006 OMC position, and (ii) the position went to Bill Hardy instead. The court, therefore, finds that Young's §1981 failure to promote claim ripened on April 12, 2006. Because Young filed suit on April 16, 2010, more than four years later, his claim with respect to the 2006 OMC position is not timely.

### b. The Case on the Merits

The court's finding that the two-year statute of limitations applies in this case is dispositive of the matter. However, the court notes that even if timeliness was not an issue, Young would not prevail in the case on the merits, for the reasons discussed below.

The parties agree that this is a case involving alleged circumstantial evidence of discrimination. Therefore the burden-shifting analysis of <u>McDonnell-Douglas Corp. v. Green,</u> 411 U.S. 792 (1973), applies. A plaintiff can establish a circumstantial, prima facie case of race discrimination by a showing that: (1) he is a member of a protected class, (2) he was qualified and applied for the promotion, (3) he was rejected despite his qualifications, and (4) other equally or less well-qualified employees who were not members of the protected class were promoted. <u>Wilson v. B/E Aerospace, Inc.,</u> 376 F.3d 1079, 1089 (11th Cir. 2004). If a prima facie case is established, the burden shifts to the defendant to set forth legitimate and nondiscriminatory reasons for the employment decision in question. <u>St. Mary's Honor Ctr. v. Hicks,</u> 509 U.S. 502, 506-507 (1993). If such reasons are established by the defendant, the burden shifts back to the plaintiff to show that the reasons are a pretext for unlawful discrimination. <u>Reeves v. Sanderson Plumbing Products, Inc.,</u> 530 U.S. 133, 143 (2000).

### 1. Prima Facie Case

### (a) 2006 Area Manager Position

IP argues initially that Young has not established a prima facie case of discrimination with respect to two of the promotions in question because he failed to complete the application process. First, IP claims that Young withdrew his application for the 2006 area manager position. Support for this claim is found in the declarations of Rusty Adair, human resource manager for IP's Riverdale plant. (Doc. 29-1, p. 5; Doc. 37, p. 6). They show that while Young applied for this position,

he later advised IP that he was withdrawing his application. Significantly, Young does not dispute this contention. Accordingly, Young has not established a prima facie case with respect to the 2006 area manager position.

### (b) 2007 OMC Position

Secondly, IP points out that Young did not interview for the 2007 OMC position opening. (Doc. 29-1, p. 5). Young responds by admitting that he did not interview for the position, but states that this was because he was informed by IP that another employee had been chosen for the job. This contention is supported by Young's deposition testimony. (Doc. 35-5, pp. 28-29). Therefore, there is at least a question of fact as to why Young did not complete the application process. If he was in fact told that the job had been given to another, his failure to sit through the interview process may be excusable.

However, the 2007 OMC position was ultimately awarded to Levell Hairston, who is African-American. (Doc. 29-1, p. 5). Therefore, Young cannot establish a prima facie case of discrimination because he cannot show that the promotion went to another employee outside of Young's protected class.

### (c) 2007 Process Manager Position

IP also argues that Young has not established a prima facie case of discrimination with respect to his alleged application for the 2007 process manager position because he cannot show that he applied for the promotion.

The only evidence in the record that Young cites to support the allegation that he applied for a promotion to process manager is his own deposition testimony.

(Doc. 35-5, p. 52).  IP, on the other hand, points to Young's employment application history, which reflects his applications for the 2006 OMC position, the 2006 area manager position, the 2007 OMC position, and the 2007 MMA program, but does not show any application for a process manager position. (Doc. 37, p. 9).  IP also points to the declaration of Rusty Adair, IP's human resources manager, who states that the process manager position was not posted until 2008, (Doc. 37, p. 5), meaning that Young could not have applied for this promotion in 2007.  Young admits that he did not apply for any promotion after he was accepted to the MMA program in 2007. (Doc. 29-2, p. 33).

As stated above,  "[t]he mere existence of some evidence to support the nonmoving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (citation omitted).  By this standard, Young's allegation and conclusory testimony, without more, are not sufficient to establish that he applied for the 2007 process manager position.  In light of documentary evidence to the contrary, the court finds that a reasonable jury would not find that Young has stated a prima facie case on this point.

### (d) 2006 OMC Position

Young asserts Bill Hardy, who is white and who received the 2006 OMC promotion, was less qualified than Young.  (Doc. 1, pp. 7-8).  Young cites the testimony of Joseph Crosby, a former employee of IP's human resources department

in Selma, who stated that Hardy did not have a college degree and had not previously worked on either of IP's two paper machines, (Doc. 35-7, pp. 4-5), whereas Young asserts that he holds a Bachelor of Science degree in Industrial Technology and had nine years of experience working on paper machine number 15, plus eleven years experience working with the maintenance department. (Doc. 35-5, p. 32).

This testimony is sufficient for Young to establish a circumstantial, prima facie claim of discrimination pursuant to §1981. Therefore, the burden shifts to IP to set forth legitimate and nondiscriminatory reasons for hiring Bill Hardy rather than Young for the 2006 OMC position.

## 2. Employer's Legitimate, Non-Discriminatory Reasons

IP states that it hired Bill Hardy for the 2006 OMC position because of his experience as a process manager in the PS&D department, as well as his experience troubleshooting various maintenance problems. (Doc. 29-1, pp. 4-5). This combination of maintenance and management experience made Hardy the most qualified candidate, according to IP. Id. Although Young cited the testimony of Joseph Crosby for the proposition that Hardy was less-qualified than Young, Crosby's testimony actually tends to support IP on this point. For example, when asked why he thought Hardy was selected as the OMC for paper machine number 15, Crosby replied:

> Bill Hardy had a track record of being a successful supervisor. That was one of the reasons he was brought over to the paper machine. The paper machine was kind of struggling from an operational standpoint, so we

> needed his expertise.  He was very good technically and
> mechanically, and also he was good with people.

(Doc. 35-7, p. 7).  The reasons for hiring Bill Hardy, as stated by IP in the

Declaration of Rusty Adair (Doc. 29-1) and in the testimony of Joseph Crosby (Doc.

35-7), are perfectly legitimate and non-discriminatory.  Therefore, the presumption

of discrimination is rebutted, and thus disappears.  <u>Smith v. Lockheed-Martin

Corporation</u>, 2011 WL 2567777, *2 (11th Cir. 2011).  The inquiry now proceeds to a

"new level of specificity," whereby the plaintiff must prove by a preponderance of

evidence that the defendant's reason is a mere pretext for unlawful discrimination

or retaliation.  <u>Id.</u> at *3. (citations omitted).

### 3. Pretext

A plaintiff may demonstrate that an employer's reason is pretextual by

identifying "such weaknesses, implausibilities, inconsistencies, incoherencies or

contradictions in the employer's proffered legitimate reasons for its actions that a

reasonable factfinder could find them unworthy of credence." <u>Ritchie v. Industrial

Steel, Inc.</u>, 2011 WL 1899570, *5 (11th Cir. 2011) (<u>citing</u> <u>Combs v. Plantation

Patterns</u>, 106 F.3d 1519, 1538 (11th Cir. 1997).  Rather than "simply quarreling

with the wisdom of [the employer's] reason," the plaintiff "must meet that reason

head on and rebut it." <u>Id.</u> (<u>quoting</u> <u>Chapman v. AI Transport</u>, 229 F.3d 1012, 1030

(11th Cir. 2000)).  "The inquiry into pretext centers on the employer's beliefs, not

the employee's beliefs." <u>Alvarez v. Royal Atlantic Developers, Inc.</u>, 610 F.3d 1253,

1266 (11th Cir. 2010).

Young asserts that Hardy's maintenance experience and experience troubleshooting maintenance issues makes Hardy indistinguishable from Young, and touts his years of experience working on the paper machine, as well as his experience performing RCFA to bolster this claim. (Doc. 34, pp. 23-24). Young also claims that Hardy's experience as a process manager in the PS&D department is irrelevant to determining whether he was the best-qualified candidate for an OMC position in the paper department. Id. Furthermore, Young points to Crosby's testimony that an employee who worked on the paper machines would be more familiar with those machines than an employee who had not worked on the paper machines. (Doc. 35-7, p. 6).

Young's argument and evidence fall well short of being sufficient to create a genuine issue of material fact regarding pretext. Federal courts are not in the business of judging whether employment decisions are prudent or fair. Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1361 (11th Cir. 1999). Rather, the court's sole concern is whether unlawful discriminatory animus motivates a challenged employment decision. Id. (citing Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1187 (11th Cir. 1984)). Young has made no showing that IP was secretly motivated by race, other than pointing to the fact that Hardy is white and did not possess a college degree. Young merely asserts that his years of experience in a non-supervisory, non-management role working on the paper machine necessarily makes him better qualified to work in a management position than Hardy, who did have management experience, and was hired on as

the OMC in part because of his successful track record as a supervisor. (Doc. 35-7, p. 7). "A plaintiff cannot prove pretext by simply arguing or even by showing that he was better qualified than the [person] who received the position he coveted." Brooks v. County Commission of Jefferson County, 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting Alexander v. Fulton County, 207 F.3d 1303, 1339 (11th Cir. 2000)). Accordingly, the court finds that Young cannot survive summary judgment on this issue.


## CONCLUSION

Upon a thorough analysis of all matters presented, the court concludes that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. IP's motion for summary judgment (Doc. 29) is therefore **GRANTED** as to all claims.

**DONE** and **ORDERED** this 24th day of August, 2011.

/s/ Callie V. S. Granade
UNITED STATES DISTRICT JUDGE