IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| EDWIN F. YOUNG, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 10-179-CG-M |
| INTERNATIONAL PAPER COMPANY, | ) | |
| Defendant. | ) | |

## ORDER

This matter is before the court on defendant, International Paper Company's ("IP's"), motion for an award of its attorney's fees and to re-tax costs against the plaintiff, Edwin F. Young ("Young"). (Doc. 58). The court has reviewed IP's motion, as well as Young's response (Doc. 67), and his verified financial statement (Doc. 72).

### I. BACKGROUND

Young is an African-American male who has worked for IP since January 2, 1995. (Doc. 1, pp. 2-3). He filed suit in this court on April 16, 2010, (Doc. 1) alleging that IP unlawfully discriminated against him multiple times on the basis of his race when it promoted less-qualified white employees instead of Young. (Doc. 1, ¶¶ 77-78). On May 26, 2010, IP filed a motion for judgment on the pleadings based on the statute of limitations. (Doc. 19). On September 13, 2010, this court granted IP's motion in part, finding, concerning Young's claims, that "regardless of whether the two-year or the four-year statute of limitations is applicable, all of IP's denials of promotion that occurred prior to April 16, 2006, are barred by either statute of

1

limitations." Id. at p. 6.  The motion was denied as to the three latest denials of promotion alleged in the complaint.  Id.

On May 20, 2011, IP filed its motion for summary judgment (Doc. 29).  Young filed a response in opposition (Doc. 34), and IP filed a reply brief (Doc. 38).  After briefing, on August 24, 2011, the court issued an order granting summary judgment (Doc. 54) to IP on all counts, finding that all of the positions to which Young applied would have "risen to the level of an opportunity for a new and distinct relation between the employee and the employer" as contemplated by the United States Supreme Court in Patterson v. McLean Credit Union, 491 U.S. 164, 185 (1989). Therefore, Young's claims were barred by the most analogous state statute of limitations, which in Alabama is two years.  (Doc. 54, pp. 8-9).

IP now petitions the court for an award of its deposition costs and attorneys' fees incurred in this action.  (Docs. 56 and 58).

## II. MOTION TO RE-TAX COSTS

The clerk taxed costs in the amount of $80.70.  (Doc. 57).  IP seeks to re-tax the costs of three depositions in the case against Young, totaling $1,134.86.  (Doc. 58, p. 1).

"In the exercise of sound discretion, trial courts are accorded great latitude in ascertaining taxable costs." Loughan v. Firestone Tire & Rubber Co., 749 F.2d 1519, 1526 (11th Cir. 1985) (citing United States v. Kolesar, 313 F.2d 835 (5th Cir. 1963)). However, in exercising its discretion to tax costs, absent other explicit statutory authorization, federal courts are limited to those costs specifically enumerated in 28

U.S.C. § 1920. <u>Crawford Fitting Co. v. J. T. Gibbons, Inc.</u>, 482 U.S. 437, 445 (1987). The word "costs" is not synonymous with "expense." <u>Eagle Insurance Co. v. Johnson</u>, 982 F.Supp. 1456, 1458 (M.D. Ala. 1997). "[E]xpense includes all the expenditures actually made by a litigant in connection with the lawsuit." <u>Id.</u> (citations omitted). "Whereas the costs that the district court may award under Rule 54(d)(1) are listed in 28 U.S.C.A. § 1920, a district court may not award other costs or exceed the amounts provided in § 1920 without explicit authorization in another statutory provision." <u>Id.</u> (citations omitted). Thus, the costs will almost always be less than the total expenses associated with the litigation. <u>Id.</u> (citations omitted).

The court's power to tax costs is grounded in part in Rule 54(d)(1) of the Federal Rules of Civil Procedure, which states: "Unless a federal statute, these rules, or a court order provides otherwise, costs - other than attorney's fees - should be allowed to the prevailing party." <u>Fed.R.Civ.P. 54(d)(1)</u>. Rule 54(d) gives rise to a presumption that costs will be awarded, and the party opposing the award must overcome this presumption. <u>Manor Healthcare Corp. v. Lomelo</u>, 929 F.2d 633, 639 (11th Cir. 1991); <u>see</u> also <u>Monelus v. Tocodrian, Inc.</u>, 609 F.Supp.2d 1328, 1333 (S.D. Fla. 2009) ("When challenging whether costs are taxable, the losing party bears the burden of demonstrating that a cost is not taxable[.]"). Section 1920 of Title 28 authorizes a judge or clerk of court to tax six items as costs:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

3

(4) Fees for exemplification and costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. A court may not award costs that exceed those permitted by § 1920. See Glenn v. Gen. Motors Corp., 841 F.2d 1567, 1575 (11th Cir. 1988).

The court notes that in civil rights cases, and under particular fee statutes, reasonable out-of pocket expenses of the kind normally charged to clients by attorneys, but not recoverable as costs under 28 U.S.C. § 1920, may be included as part of the award for attorney's fees and expenses. See Dowdell v.. City of Apopka, Florida, 698 F.2d 1181, 1192 (11th Cir. 1983) ("We hold that, with the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988.").

IP seeks to re-tax its court reporter and transcript costs incurred when IP deposed Young and when it obtained copies of the deposition of Charles Levell Hairston and Joseph Crosby, both of whom were deposed by Young. (Doc. 58, p. 16). The court finds that these expenses were necessary for IP's use in the case, and accordingly, IP's motion to re-tax costs is hereby **GRANTED** and costs are re-taxed

4

against Young in the amount of $1,215.56 ($80.70 taxed by the Clerk, plus $1,134.86).

### III. MOTION FOR ATTORNEYS' FEES

### A. WHEN AN AWARD OF ATTORNEYS' FEES IS APPROPRIATE

The attorney's fee provision of Title VII, 42 U.S.C. § 2000e-5(k), authorizes courts to award reasonable fees and expenses to prevailing civil rights litigants. Similarly, 42 U.S.C. § 1988 gives the court discretion, in cases brought under § 1981, to award the prevailing party a reasonable attorney's fee. Although "attorney's fees are typically awarded to successful Title VII plaintiffs as a matter of course, prevailing defendants may receive attorney's fees only when the plaintiff's case is 'frivolous, unreasonable, or without foundation", even though not brought in subjective bad faith. Quintana v. Jenne, 414 F.3d 1306, 1309 (11th Cir. 2005) (quoting Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421-22 (1978)); see also Hughes v. Rowe, 449 U.S. 5, 14 (1980) (applying Christiansburg to attorney's fees under §1988 brought by prevailing civil rights defendants).

To make this determination, the district court must examine "whether (1) the plaintiff established a prima facie case; (2) the defendant offered to settle; and (3) the trial court dismissed the case prior to trial." Bonner v. Mobile Energy Servs. Co., L.L.C., 246 F.3d 1303, 1304 (11th Cir. 2001) (citing Sullivan v. School Board of Pinellas County, 773 F.2d 1182, 1189 (11th Cir. 1985)). The Eleventh Circuit has also cautioned that "[d]eterminations regarding frivolity are to be made on a case-by-case basis." Sullivan, supra. Furthermore, "the perception that counsel was

primarily at fault in filing or maintaining a frivolous, groundless, or unreasonable claim should play no role in the decision whether to assess attorney's fees against the plaintiff in a Title VII case." Durrett v. Jenkins Brickyard, Inc., 678 F.2d 911, 916 (11th Cir. 1982).

The court addresses the second and third factors first, noting that, according to Young's version of events, the parties mediated the case, and came "very close to reaching a settlement," with IP making a settlement offer. (Doc. 67, p. 7). That IP made an offer, but the case ultimately did not settle, does not weigh in Young's favor. Additionally, the court awarded summary judgment to IP on all of Young's claims prior to a trial on the merits, which constitutes another factor weighing against Young.

Turning to the first Sullivan factor, the court notes that Young failed to set forth a prima facie case with regard to three of his four claims of failure to promote, because (1) he admitted to withdrawing his application before one position was awarded (2006 area manager position); (2) an African American was ultimately selected for another position (2007 OMC position); and (3) there was no record evidence that Young had ever applied for a third position (2007 process manager position). See Doc. 54, pp. 19-21. However, Young did succeed in establishing a prima facie case with regard to a fourth position (the 2006 OMC position), for which IP ultimately provided a legitimate, nondiscriminatory reason for hiring Bill Hardy, who is white. See id. at p. 22. Young was thereafter unable to rebut IP's nondiscriminatory reason with a showing of pretext. Id. at p. 24.

6

An analysis of the pertinent statute of limitations also figures into the question of whether Young's claims were frivolous. Under <u>Patterson</u>, 491 U.S. 164 (1989) and <u>Jones v. R.R. Donnelly & Sons, Co.</u>, 541 U.S. 369 (2004), a §1981 claim based on a promotion opportunity that would create a "new and distinct relation between the employee and employer" is subject to a two-year statute of limitations rather than the four-year statute of limitations otherwise applicable to claims arising under § 1981. <u>Jordan v. Belt Ry. Co. of Chicago</u>, 2009 WL 2972387 (N.D. Ill. September 11, 2009). Whether or not Young's promotion from process technician to OMC would create a "new and distinct" relationship required at least some discovery to determine the qualitative, rather than quantitative, differences in those positions. See <u>Taylor v. Western and Southern Life Inc. Co.</u>, 966 F.2d 1188 (7th Cir. 1992). Therefore, while the court ultimately ruled that all of Young's claims were time-barred by the two-year statute of limitations, it, nevertheless, was reasonable for Young to continue with discovery to determine the viability of the underlying race discrimination claim for the 2006 OMC position – the one claim for which Young established a <u>prima</u> <u>facie</u> case -- in the event that the statute of limitations did not prove to be a barrier. <u>Accord</u> <u>Jordan</u>, <u>supra</u>.

Accordingly, any amount of attorneys' fees that IP does recover will be discounted by 25%, to reflect the fact that Young was able to establish a <u>prima</u> <u>facie</u> case for one of the four positions at issue.

7

## B. CALCULATING ATTORNEYS' FEES

The starting point in setting any attorney's fee is determining the "lodestar" figure — that is, the product of the number of hours reasonably expended to prosecute the lawsuit multiplied by a reasonable hourly rate for work performed by similarly-situated attorneys in the community. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); see also, Norman v. Housing Authority of the City of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988). The fee applicant bears the burden of "establishing entitlement and documenting the appropriate hours and hourly rates." Norman, 836 F.2d at 1303. After calculating the lodestar fee, the court should then proceed with an analysis of whether any portion of this fee should be adjusted upwards or downwards. See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 565–66 (1986); see also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 483 U.S. 711 (1987); Hensley, 461 U.S. at 433–34. Where the rates or hours claimed seem excessive or lack the appropriate documentation, a court may calculate the award based on its own experience, knowledge, and observations. Norman, 836 F.2d at 1299.

In making the above determinations, the court is guided by the 12 factors set out in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717–19 (5th Cir. 1974). See Blanchard v. Bergeron, 489 U.S. 87, 91–92 (1989); Hensley, 461 U.S. at 434 n. 9. These factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance

of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. These Johnson factors may "be considered in terms of their influence on the lodestar amount." Norman, 836 F.2d at 1299.

### (1) Reasonable Rate

As the party requesting fees, IP has the burden of supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate for the work performed by its attorneys and paralegals. Am. Civil Liberties Union of Ga. v. Barnes, 168 F.3d 423, 427 (11th Cir. 1999) (citing Norman, 836 F.2d at 1303). The Eleventh Circuit has instructed that a reasonable hourly rate is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Norman, 836 F.2d at 1299. In this case, the relevant legal community is Mobile, Alabama. See Barnes, 168 F.3d at 437 ("[T]he 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is the place where the case is filed." (citation omitted)).

IP has submitted an affidavit from its in-house counsel, Jessica Neal, which sets forth the hourly rate and number of hours spent working on this case by IP's outside counsel, Sandy G. Robinson, Michael E. Turner, Ian D. Rosenthal, and

9

Jason W. Bobo. (Doc. 58-1). Ms. Robinson and Mssrs. Turner and Rosenthal are partners in the Mobile, Alabama, law firm of Cabaniss, Johnston, Gardner, Dumas & O'Neill LLP ("Cabaniss Johston"). Mr. Bobo is an associate in the same office. Ms. Robinson has approximately 27 years of experience in civil litigation, and her hourly rate is $220.00 per hour. (Doc. 58-1, p. 2). Mr. Turner and Mr. Rosenthal each have approximately 15 years of experience in civil litigation, and their hourly rate is $190.00 per hour each. Id. Mr. Bobo has approximately three years experience in civil litigation, and his hourly rate is $150.00 per hour. Id.

Based on the court's experience, knowledge, and observations, as well as a review of prior awards, the court finds that the hourly rates proposed by defense counsel are reasonable. Compare Gulf Coast Asphalt Company, LLC v. Chevron, U.S.A., Inc., 2011 WL 612737 (S.D. Ala., Feb. 11, 2011) (Granade, J.) (finding that the average or reasonable hourly rate charged by top Mobile lawyers in complex cases is in the range from $250 to $350 per hour, and that $200.00 per hour is a reasonable hourly rate for an attorney with seven years experience as a law firm associate) (quotations omitted); see also Vision Bank v. Anderson, No. 10-0372-KD-M, 2011 WL 2142786, *3 (S.D. Ala., May 31, 2011) (DuBose, J.) (finding $250.00 per hour to be a reasonable rate for an attorney with 15 years experience as a law firm partner); see also Adams v. Austal, U.S.A., LLC, 2010 WL 2496396, *6 (S.D. Ala. 2010) (finding $150.00 to be a reasonable rate for an attorney with three years experience as a law firm associate).

### (2)  Hours Reasonably Expended

In determining whether the number of hours expended are reasonable, the court should not include any hours which are "excessive, redundant or otherwise unnecessary."  Norman, 836 F.2d at 1301.  When awarding an attorney's fee, the "[c]ourts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded."  Barnes, 168 F.3d at 428.  The court will not permit a party to recover fees for hours that are excessive, redundant, or unnecessary, i.e., hours "that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel."  Norman, 836 F.2d at 1301. (emphasis omitted).

Here, it is impossible for the court to analyze properly the entire $52,072.75 fee award claimed by IP, because almost two-thirds of this amount, or $31,857.00, is presented to the court as an estimate for legal services rendered but not billed as of September 7, 2011 (the date that IP filed its attorneys' fees motion ).  Id.  IP submitted no hours, no detailed billing statements –nothing which might guide the court in determining whether this estimate for the month of August is reasonable or not.  IP stated in its motion that "to the extent these [billing] statements are ordered by the Court to be submitted, IP moves that it be permitted to submit redacted versions of those statements under seal."  Id. at 16.  With this request, IP neatly places the onus on the court to request the evidence necessary to perform its statutorily-mandated reasonableness analysis, rather than IP supplementing the

11

motion as soon as possible on its own initiative.  Accordingly, the undocumented estimate of attorneys' fees for the month of August are hereby denied.  The raw hours reported for defense counsel's work through July 31, 2011 -- 72.9 for Michael Turner, 21.8 for Jason Bobo, 10.8 for Sandy Robinson, and 6.9 for Ian Rosenthal – appear to be, based upon the court's experience, knowledge and observation, reasonable for the amount of work involved in defending a federal civil rights action through discovery and summary judgment, and therefore are allowed.

### C. LODESTAR CALCULATION

The lodestar calculation for Ms. Robinson is 10.8 hours x $220 per hour = $2,376.00.  For Mr. Turner, the lodestar calculation is 72.9 hours x $190 per hour = $13,851.  For Mr. Rosenthal, the lodestar calculation is 6.9 hours x $190 per hour = $1,311.00.  For Mr. Bobo, the lodestar calculation is 21.8 hours x $150 per hour = $3,270.00.  The total lodestar amount is $20,808.00.

### D. ADJUSTMENT

#### (1) Johnson Factors

In Johnson v. Georgia Highway Express, Inc., supra, the Fifth Circuit set out the 12 factors discussed above, which a court should consider in awarding attorney's fees to a prevailing Title VII plaintiff.  The Fifth Circuit later affirmed the use of these Johnson factors to determine the amount of an attorney's fee award to a prevailing Title VII defendant.  Jones v. Dealers Tractor & Equipment Co., 634 F.2d 180 (5th Cir. 1981).

One year later, the Eleventh Circuit added a thirteenth factor to the Johnson analysis: the plaintiff's financial resources. Durrett v. Jenkins Brickyard, Inc., 678 F.2d 911, 917 (11th Cir. 1982). In Durrett, the Eleventh Circuit directed the district court to "ascertain whether, in light of the plaintiff's ability to pay, a reduced assessment would fulfill the deterrent purpose of § 706(k) without subjecting the plaintiff to financial ruin." Id. At the same time, the Eleventh Circuit also held that "in no case may the district court refuse altogether to award attorney's fees to a prevailing Title VII defendant because of the plaintiff's financial condition. A fee must be assessed which will serve the deterrent purpose of the statute, and no fee will provide no deterrence." Id.

A party attempting to limit an award of attorneys' fees bears the burden of establishing his financial status. Scelta v. Delicatessen Support Services, Inc., 203 F. Supp.2d 1328, 1336 (M.D. Fla. 2002). On October 26, 2011, the court ordered Young to file a financial statement setting forth his income, assets, and liabilities. (Doc. 64). Young complied and filed an affidavit stating that he has $413,943.00 in assets, $148,582.00 in liabilities, and a net worth of $ 265,361.00. (Doc. 72, p. 4). According to Young's 2010 federal tax return, Young's gross annual income for that year was $48,237. (Doc. 70, p. 6).

Based upon the financial information supplied by Young, and given that the court has both disallowed almost two-thirds of the requested attorney fee award, and further reduced any attorney fee award by 25% (see p. 7, supra), the court finds any further adjustment in the amount of the award to be unnecessary, and also

finds that the imposition of a $15,606.00 award is appropriate.  This amount represents the full lodestar amount of $20,808 (through July 31, 2011) minus 25%, or $5,202.  Thus, together with court costs of $1,215.56, IP will recover $16,821.56 from Young for this litigation.  The court finds that this amount will not subject Young to financial ruin, provided that he is allowed a reasonable period of time in which to pay the award.  Accordingly, Young is ordered to pay IP in 59 monthly increments of $280.35 per month, and one monthly payment of $280.91, beginning February 1, 2012.  This amount is exclusive of interest, which is not allowed.

## CONCLUSION

For the reasons stated above, the court finds that IP is entitled to an award of attorneys' fees in the amount of $15,606.00 and costs in the amount of $1,215.56 ($80.70 taxed by the Clerk, plus $1,134.86 retaxed by the court), for a total award of $16,821.56.

**DONE** and **ORDERED** this 6th day of January 2012.

/s/  Callie V. S. Granade
UNITED STATES DISTRICT JUDGE